UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SUSAN B. LONG and )
TRAC REPORTS, INC., )
 )
Plaintiffs, )
 )
v. )
 )   No. 5:23-cv-1564 (DNH/TWD)
U.S. IMMIGRATION AND CUSTOMS )
ENFORCEMENT and )
U.S. CUSTOMS AND BORDER )
PROTECTION, )
 )
Defendants. )
_____ )

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT U.S. CUSTOMS AND BORDER PROTECTION'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Nicolas A. Sansone
(admitted pro hac vice)
Michael T. Kirkpatrick
(admitted pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

LEGAL STANDARDS .................................................................................................... 4

ARGUMENT .................................................................................................................... 6

I.    CBP is not entitled to summary judgment. ............................................................ 6

II.   Plaintiffs are entitled to summary judgment. ...................................................... 14

III.  In the alternative, a ruling on summary judgment should be deferred pending discovery. .............................................................................................................. 14

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Akel v. U.S. Department of Justice,*
  No. 20-cv-03240, 2024 WL 939974 (D.D.C. Mar. 4, 2024) .................................................... 16

*American Civil Liberties Union Foundation of Arizona v. U.S. Department of Homeland
  Security,*
  No. 14-cv-02052, 2017 WL 8895339 (D. Ariz. Jan. 26, 2017) ............................................... 11

*American Civil Liberties Union Immigrants' Rights Project v. U.S. Immigration & Customs
  Enforcement,*
  58 F.4th 643 (2d Cir. 2023) ........................................................................................ 5, 12, 14

*Buzzfeed, Inc. v. U.S. Department of Homeland Security,*
  No. 19-cv-03062, 2023 WL 5133158 (D.D.C. Aug. 10, 2023) ............................................... 11

*Carney v. U.S. Department of Justice,*
  19 F.3d 807 (2d Cir. 1994)........................................................................................... 5, 15

*Cause of Action Institute v. Office of Management & Budget,*
  10 F.4th 849 (D.C. Cir. 2021) ............................................................................................. 6

*Cox v. U.S. Department of Justice,*
  111 F.4th 198 (2d Cir. 2024) .............................................................................................. 8

*Doyle v. U.S. Department of Homeland Security,*
  959 F.3d 72 (2d Cir. 2020)................................................................................................. 6

*Elliott v. Cartagena,*
  84 F.4th 481 (2d Cir. 2023) .......................................................................................... 5, 15

*Kayll v. U.S. Department of Homeland Security,*
  No. 22-cv-02830, 2024 WL 81231 (D.D.C. Jan. 8, 2024)............................................. 7, 8, 10

*Kissinger v. Reporters Committee for Freedom of the Press,*
  445 U.S. 136 (1980)..................................................................................................... 9, 10

*Osen LLC v. U.S. Central Command,*
  969 F.3d 102 (2d Cir. 2020)............................................................................................... 4

*Public Citizen Health Research Group v. U.S. Food & Drug Administration,*
  185 F.3d 898 (D.C. Cir. 1999) ............................................................................................ 5

*Seife v. U.S. Food & Drug Administration,*
  43 F.4th 231 (2d Cir. 2022) .......................................................................................... 4, 14

*U.S. Department of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ................................................................................ 6, 10

**Statutes**

5 U.S.C. § 552(a)(8)(A)(ii)(I) ......................................................................... 12

**Rules**

Federal Rule of Civil Procedure 26(b)(1) ...................................................... 15

Federal Rule of Civil Procedure 56(a) ............................................................ 4

Federal Rule of Civil Procedure 56(d) ............................................................ 5

**Other Authorities**

U.S. Customs and Border Protection,
   *Nationwide Encounters* (last updated Oct. 22, 2024) ............................... 11

U.S. Customs and Border Protection,
   *Nationwide Encounters Data Dictionary* (Sept. 2023) ............................. 12

U.S. Department of Homeland Security,
   *Privacy Impact Assessment for the CBP Portal (e3) to EID/IDENT* (Aug. 2, 2021) ... 7, 8, 9, 13

U.S. Department of Homeland Security,
   *Privacy Impact Assessment for the Enforcement Integrated Database* (Jan. 14, 2010) ............. 2

U.S. Department of Homeland Security,
   *Privacy Impact Assessment for the U.S. Customs and Border Protection Unified
   Secondary* (Dec. 16, 2020) ........................................................................ 13

U.S. Government Accountability Office,
   *Border Patrol: Key Elements of New Strategic Plan Not Yet in Place to Inform Border
   Security Status and Resource Needs* (Dec. 2012) ..................................... 13

## PRELIMINARY STATEMENT

Over a year ago, Plaintiffs Susan B. Long and TRAC Reports, Inc., submitted a request to Defendant U.S. Customs and Border Protection (CBP) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking records from the Enforcement Integrated Database (EID), a government database containing immigration enforcement records.[1] CBP did not respond, and Plaintiffs filed this lawsuit to seek production of the requested records. CBP has now moved for summary judgment, arguing that the requested records are not CBP's "agency records" within the meaning of FOIA. This Court should deny CBP's motion.

FOIA requires an agency to produce requested records that the agency possesses and controls. CBP undisputedly inputs troves of data into the EID, and it undisputedly can and does access, manipulate, and disseminate that data to carry out its mission. CBP's undisputed creation and regular use of the data that it stores in the EID establish as a matter of law that the data is part of CBP's agency records, and the fact that U.S. Immigration and Customs Enforcement (ICE) may own the repository in which CBP's data is housed does not change the analysis. Indeed, up until now, CBP had long understood that the records that it creates in the EID and regularly uses for its own operational purposes are CBP records. Moreover, Plaintiffs seek EID records that are directly related to CBP's activities and that ICE has disclaimed the ability to locate and produce. Under these circumstances, CBP cannot credibly argue that it is entitled to judgment as a matter of law on Plaintiffs' FOIA claim.

For the same reasons, Plaintiffs are entitled to summary judgment as to CBP. CBP's sole argument in favor of summary judgment fails as a matter of law, and CBP has provided no valid

---

[1] David Burnham, who was originally a plaintiff in this lawsuit, passed away on October 1, 2024. *See* Dkt. 41. His claims will be dismissed on January 6, 2025, barring substitution of a proper party in his place. *See* Dkt. 42.

justification for failing to produce responsive records within its possession and control. This Court should therefore order CBP to produce those records without further delay.

If the Court nonetheless finds that disputes of material fact foreclose a grant of summary judgment to Plaintiffs on the current record, it should defer ruling on the parties' cross-motions until discovery is complete. This Court authorized Plaintiffs to serve discovery demands on CBP, and Plaintiffs have done so. CBP has not yet responded. The requested discovery will cast meaningful light on factual contentions CBP has made in support of its arguments, and Plaintiffs should have the opportunity to respond to those arguments on a complete record.

## FACTUAL BACKGROUND

The EID is a database that "captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations" conducted by CBP, ICE, and other components of the U.S. Department of Homeland Security (DHS). DHS, *Privacy Impact Assessment for the Enforcement Integrated Database* at 2 (Jan. 14, 2010), https://tinyurl.com/57d3z7vk. On September 21, 2023, Plaintiffs submitted a FOIA request to CBP, seeking "a copy of all records and fields" from the EID regarding each individual the CBP had "encountered" from Fiscal Year 2020 onward. Dkt. 39-4 at 1. CBP acknowledged receiving the request but did not otherwise reply. Sansone Decl. ¶¶ 3–4 & Exh. A.

Plaintiffs then filed this lawsuit, claiming that CBP had violated FOIA by withholding the requested records. Dkt. 1 ¶¶ 18–19. After CBP filed its answer, Dkt. 18, the parties agreed to meet and confer regarding settlement, Sansone Decl. ¶ 6. On April 19, 2024, Plaintiffs made a written settlement proposal that reduced the volume of the requested records, invited feedback about ways that the proposal could be better tailored to suit CBP's needs, and expressed

Plaintiffs' openness to further refining the proposal in light of such feedback. *Id.* ¶ 7. About two months later, CBP indicated at a June 17, 2024, status conference that it could not provide an estimate of when it would be able to respond to this settlement proposal. *Id.* ¶ 9. Plaintiffs then proposed three alternative possibilities for limited production that CBP could make in the interim to facilitate the settlement process. *Id.* ¶ 10. CBP rejected all three proposals on July 22, 2024, without offering counterproposals, and the parties concluded during a July 26, 2024, meet-and-confer that they had reached an impasse and should proceed to dispositive motions. *Id.* ¶ 11.

During that same meet-and-confer, Plaintiffs stated that in order to narrow the issues before the Court, they would focus their legal challenge solely on CBP's failure to produce a discrete subset of the records that Plaintiffs had originally requested. *Id.* ¶¶ 11–12. By letter dated August 1, 2024, Plaintiffs agreed to challenge only CBP's failure to produce:

> (1) All datapoints (from any time) that are directly or indirectly linked to a person for whom [ICE or CBP] ha[s] established an official case seeking that person's removal from the country.

> (2) All datapoints (from any time) that are directly or indirectly linked to a person who was apprehended pursuant to a CBP "encounter" in or after Fiscal Year 2020, with "encounter" used to mean the same thing that CBP uses it to mean in its Nationwide Encounters Dataset.

> (3) All code files, lookup tables, or other records that translate the specific codes used in connection with the datapoints contained in paragraphs (1) and (2) above into their corresponding meaning.

Dkt. 39-5 at 2. The letter stated that Plaintiffs would not challenge CBP's decision to redact "free-format fields or, in other words, fields that contain potentially unique individualized content entered into each cell, as distinct from standardized-content fields that allow only standardized entries (such as dates, times, numbers, codes, or categories)." *Id.* CBP accepts the August 1 letter as the operative FOIA request for all present purposes. Dkt. 39-1 at 2 n.1.

On October 1, 2024, CBP moved for summary judgment. Dkt. 39. Along with the motion, CBP filed a declaration from Patrick A. Howard, a Branch Chief in CBP's FOIA Division. *See* Dkt. 39-6 (Howard Decl.) ¶ 1. Following a meet-and-confer, Plaintiffs filed an October 9, 2024, letter motion, asking that summary judgment briefing be deferred to permit Plaintiffs an opportunity to conduct discovery to probe the factual representations in Mr. Howard's declaration. Dkt. 43. Magistrate Judge Dancks denied the letter motion but authorized Plaintiffs to serve discovery demands. Dkt. 45. Plaintiffs served their discovery demands on CBP on October 31, 2024, and CBP has yet to respond. Sansone Decl. ¶¶ 16–20 & Exhs. B, C, D. CBP's deadline to do so is December 2, 2024. Sansone Decl. ¶ 20.

## LEGAL STANDARDS

FOIA "generally provides that 'each agency, upon any request for records … shall make the records promptly available to any person.'" *Osen LLC v. U.S. Central Command*, 969 F.3d 102, 107 (2d Cir. 2020) (omission in original; quoting 5 U.S.C. § 552(a)(3)(A)). This statutory mandate "calls for broad disclosure of Government records." *Id.* (quoting *CIA v. Sims*, 471 U.S. 159, 166 (1985)). Accordingly, under FOIA, the government "has the burden of 'justify[ing] the withholding of any requested documents,'" *Seife v. FDA*, 43 F.4th 231, 235 (2d Cir. 2022) (alteration in original; quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)), with "[a]ll doubts … resolved in favor of disclosure," *id.* (quoting *Bloomberg, LP v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010)).

As in any case, summary judgment in a FOIA case is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the government is the movant, it accordingly must show that the undisputed facts establish a justification for failing to produce each record sought.

*See Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). But where the requester is the movant, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Id.* at 904–05 (quoting *Nat'l Ass'n of Gov't Emp'ees v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

Although agency declarations that "describe the justifications for nondisclosure with reasonably specific detail" can be a basis for awarding summary judgment in the government's favor, *ACLU Immigrants' Rights Project v. ICE*, 58 F.4th 643, 651 (2d Cir. 2023) (quoting *Knight First Amendment Inst. v. USCIS*, 30 F.4th 318, 327 (2d Cir. 2022)), summary judgment for the government is improper where the requester "make[s] a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide[s] some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate," *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (citations omitted). In addition to denying the government's motion for summary judgment in such cases, a court has discretion to order discovery into the government's claimed defenses. *Id.* at 812–13.

Finally, under Federal Rule of Civil Procedure 56(d), a court may defer ruling on a summary judgment motion to permit time for discovery "[i]f a nonmovant shows by affidavit or declaration that … it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Critically, "[w]hen a party has not had *any* opportunity for discovery, summary judgment is generally premature." *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023).

# ARGUMENT

## I.    CBP is not entitled to summary judgment.

CBP's lone argument in support of its summary judgment motion is that ICE, not CBP, "owns and operates" and otherwise "maintains" the EID and, therefore, that the EID does not contain CBP "agency records" within the meaning of FOIA. Dkt. 39-1 at 1. This argument is legally unsound. While CBP emphasizes a handful of irrelevant limitations on its level of control over the data that it inputs into the EID, CBP disregards the many ways that it can and does control that data.[2] Moreover, CBP's argument is inconsistent with the agency's past practices, and it is especially inappropriate here, where part of Plaintiffs' FOIA request is specifically directed to a subset of EID data that CBP, rather than ICE, is uniquely well equipped to produce.

**A.** The Supreme Court has held that a FOIA request properly seeks "agency records" where the agency to which the request is directed (1) has "'either create[d] or obtain[ed]' the requested materials" and (2) is "in control of the requested materials at the time the FOIA request is made." *DOJ v. Tax Analysts*, 492 U.S. 136, 144–45 (1989) (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)). In the event of a "dispute about what qualifies as an agency record, '[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records.'" *Doyle v. DHS*, 959 F.3d 72, 76 (2d Cir. 2020) (alteration in original; quoting *Tax Analysts*, 492 U.S. at 142 n.3). In such cases, the agency's "[a]ctual use" of the record at issue is often "the decisive factor" in deciding whether the record is an "agency record." *Cause of Action Inst. v. OMB*, 10 F.4th 849, 857 (D.C. Cir. 2021) (second quoting *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927 (D.C. Cir. 2011)).

---

[2] CBP also argues that it has not "withheld" any EID data, Dkt. 39-1 at 3–4, and that a search for responsive EID records would be futile, *id.* at 10. Because both of these arguments rest on the premise that CBP lacks possession or control over the requested records, *see id.* at 3–4, 10, they fail for the same reasons as CBP's "agency records" argument.

As for creation, CBP has a specialized portal through which it "collect[s] and transmit[s] data related to law enforcement activities" into the EID. DHS, *Privacy Impact Assessment for the CBP Portal (e3) to EID/IDENT* at 1 (Aug. 2, 2021) (hereafter, *Privacy Impact Assessment*), https://tinyurl.com/3pjucrr7. Indeed, CBP readily admits that it "contributes … data to the EID." Dkt. 39-1 at 8 n.2. Nonetheless, CBP argues that it did not create that data. *Id.* at 5–6. If CBP did not create the data that it undisputedly recorded and input into the EID, however, who did? CBP does not answer this question. Instead, it cites Mr. Howard's statement that CBP cannot "retrieve or produce records directly from within the EID that would be responsive to Plaintiffs' request." *Id.* at 5 (quoting Howard Decl. ¶ 17). This statement has nothing to do with the question of which agency created the records, and it is factually incorrect in any event. *See Privacy Impact Assessment* at 1–2 (describing a CBP portal that "transmits data in real-time to EID … and retrieves records from th[at] system[] for CBP enforcement action purposes").

CBP attempts to analogize this case to *Kayll v. DHS*, No. 22-cv-02830, 2024 WL 81231 (D.D.C. Jan. 8, 2024), which—despite the ambiguous quotation in CBP's brief, *see* Dkt. 39-1 at 8 n.2—did not involve the EID. *Kayall* lends no support to CBP's argument about record creation. In *Kayll*, CBP produced 31 pages of records in response to the plaintiff's request for records related to the State Department's denial of her application for a student visa. *See* 2024 WL 81231, at *1. At issue was whether CBP was also required to produce the information that it had input into a form that a State Department consular official had created as part of the plaintiff's application process. *Id.* at *2. The court held that the information that CBP had submitted to the State Department was not a CBP record. *Id.* at *9. As relevant here, the court expressed doubt about the plaintiff's theory of "creation-by-contribution," *id.* at *4, emphasizing that "[t]he document at issue … was initially created by the State Department" and that "CBP's

input [was] likely closely related to, and perhaps even logically intertwined with," the State Department's own processes, *id.* at *5. Importantly, though, after deeming the issue "a close question," *id.* at *4, and noting "the parties' shallow briefing of th[e] issue," the court "assume[d] without deciding that CBP ha[d] created a record," *id.* at *5. And here, unlike in *Kayll*, CBP created the information at issue for *its own* operational purposes.

As for control, courts look to factors such as "[1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files." *Cox v. DOJ*, 111 F.4th 198, 208 (2d Cir. 2024) (numbering in original; quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013)). Although CBP argues that this Court "should not resort" to an examination of these factors and should instead "apply the Supreme Court's test," Dkt. 39-1 at 7–8, the Supreme Court's test states that the agency must "control" the records at issue, and these factors represent courts' understanding of what constitutes "control." *Cox*, 111 F.4th at 208 (quoting *Tax Analysts*, 492 U.S. at 145).

CBP easily satisfies the control element of the Supreme Court's test. After uploading records to the EID, CBP retains the ability to "add [to or modify]" those records, and CBP can and does "retrieve[] [those] records … for CBP enforcement action purposes." *Privacy Impact Assessment* at 1–2. The fact that CBP regularly uses the records that it has created to fulfill its own operational mission reflects CBP's "intent … to retain … control over the records," CBP's "ability … to use … the record[s] as it sees fit," and the reality that CBP personnel regularly "read or rel[y] upon" the records. *Cox*, 111 F.4th at 208 (quoting *Judicial Watch*, 726 F.3d at 218). Although the EID is a storage repository that may be "owned and operated" by ICE,

Howard Decl. ¶ 9, that fact does not strip the underlying records of their status as CBP records. *Cf. Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 157 (1980) (rejecting the claim that the "mere physical location of paper and materials" within an agency's offices confers ownership of the materials on that agency).

None of the facts that CBP emphasizes undermine this point. CBP points out that it "does not … have access to the entire EID database," Dkt. 39-1 at 7, but the fact that CBP does not control *all* of the data in the EID says nothing about whether it controls the data that it has created and that it regularly uses for its own purposes.[3] CBP also notes that other EID users can "access[] or modif[y] data previously transmitted by CBP to the EID" without CBP's knowledge. *Id.* The evidence suggests, however, that this possibility is true as to *any* data that is input into the EID—including, presumably, data input by ICE—given that the EID is "a common database repository" used by multiple agencies. Howard Decl. ¶ 9; *cf. Privacy Impact Assessment* at 2 (noting CBP's ability to "modify" EID records). Finally, CBP contends that CBP does not "decid[e] how long … information will be retained within the EID," Dkt. 39-1 at 7, but it does not explain whether CBP's records are *ever* removed from the EID and, if so, how and by whom the decision to remove them is made. Certainly, there is no evidence that any other agency has ever prevented CBP from accessing its EID records when CBP requires them.

Moreover, the cases on which CBP relies to support its position look nothing like this one. CBP first discusses *Kissinger*, in which the plaintiffs sought records that they alleged had been "wrongfully removed from Government custody." 445 U.S. at 150. In this context, the

---

[3] CBP's claim that it "does not maintain any code files or look-up tables for the EID," Dkt. 39-1 at 7, even if true, is irrelevant for the same reason. If ICE, not CBP, creates and controls the records that translate the codes used in CBP's data, then ICE should produce them. But the question of who owns the EID's code translations does not absolve CBP of responsibility for producing the records that fall within CBP's domain.

Court found it "unnecessary to decide whether the [requested records] were 'agency records,'" *id.*, because the agency did not possess them and so could not have produced them without "commenc[ing] [a] lawsuit[] in order to obtain possession of [the] documents" from the third party who held them, *id.* at 153. Here, CBP can and does regularly access its EID data without "legal efforts to retrieve wrongfully removed documents." *Id.* at 154. And although CBP notes that an agency's "right of access" to third-party materials does not transform those materials into agency records if the agency has not "*in fact* obtained" them, *Tax Analysts*, 492 U.S. at 144 (second quoting *Forsham*, 445 U.S. at 185–86), that principle has no application here. Unlike in this case, the data at issue in *Forsham* had "never passed into the hands of the agenc[y] … but instead was produced and possessed at all times by [a] private organization." *Id.*

CBP also relies again on *Kayll*, but that case offers no more support for CBP's control argument than it did for CBP's creation argument. In *Kayll*, CBP had expressly entered into an "agreement … with the State Department, which g[ave] the State Department control over how the [record was] used," which barred CBP from "disclos[ing] or otherwise disseminat[ing] the [record]," and which required CBP to "obtain the State Department's consent" before disclosing or copying the record. 2024 WL 81231, at *5–6. By contrast, this case does not involve an agreement that affirmatively "demonstrat[es] an intent to relinquish control." *Id.* at *6.

**B.** In light of these governing legal principles, DHS, ICE, and CBP have long understood that data stored in the EID falls under the dominion of multiple agencies, including CBP, and that those agencies sometimes must collaborate to produce EID records in response to FOIA requests. For example, on a March 25, 2011, phone call regarding one of Plaintiffs' prior FOIA requests for EID data, ICE stated that although it owns the EID for "operational purposes," it does not own all of the data stored in the EID. Long Decl. ¶ 10. ICE thus responded by "working

with CBP" to facilitate production of the "data fields that [were] not ICE-owned." Long Decl. ¶ 11 & Exh. E. A letter from CBP later confirmed that ICE had asked CBP to "conduct a search for responsive records maintained by CBP," and CBP ultimately produced some of the EID records that Plaintiffs had sought. Long Decl. ¶ 12 & Exh. F.

This example is not an outlier. In a November 26, 2013, letter, ICE responded to another of Plaintiffs' FOIA requests for EID data by "referring [the] request to the FOIA Officer for [CBP]" because the information that Plaintiffs sought fell "under the purview of [CBP]." Long Decl. ¶ 13 & Exh. G. Recent cases, meanwhile, indicate that DHS's recognition that the EID contains CBP records has remained consistent over time. *See, e.g.*, *Buzzfeed, Inc. v. DHS*, No. 19-cv-03062, 2023 WL 5133158, at *1 (D.D.C. Aug. 10, 2023) (describing a DHS declaration stating that a component of CBP "was the division most likely to have responsive information" pertaining to a particular FOIA request for information that "was likely to be stored" in the EID, and explaining that CBP produced over 4.4 million rows of unredacted EID data in response); *ACLU Found. of Ariz. v. DHS*, No. 14-cv-02052, 2017 WL 8895339, at *4 (D. Ariz. Jan. 26, 2017) (describing CBP's query of the EID in response to a FOIA request).

Consistent with this accepted understanding of CBP's authority over the EID data that pertains to CBP's activities, CBP regularly releases such data to the public. *See, e.g.*, Long Dec. ¶ 12 (noting CBP's release of data from the EID in response to a 2010 FOIA request); *id.* ¶¶ 14–15 & Exhs. H & I (reflecting CBP's FOIA releases of data from 2013 and 2017 that identify the EID as the "Data Source"). Indeed, CBP releases troves of data from the EID on a recurring basis to provide detailed encounter-by-encounter information on each of the "encounters" that CBP has had with a noncitizen in a given month. CBP, *Nationwide Encounters* (last updated Oct. 22, 2024) (linking to month-by-month spreadsheets), https://tinyurl.com/yfuptrrw; *see* CBP,

*Nationwide Encounters Data Dictionary* (Sept. 2023) (listing the EID as a source of the data in the *Nationwide Encounters* datasets), https://tinyurl.com/ypa6p4zj.

Ultimately, then, CBP's own representations and actions make clear that CBP can and regularly does create, extract, and disseminate EID records. The single piece of evidence upon which CBP bases its summary judgment argument—Mr. Howard's declaration—does not say otherwise. Instead, Mr. Howard repeatedly emphasizes that "CBP does not have access to the *entire* EID database." *Id.* ¶ 11 (emphasis added); *see id.* ¶ 13 (stating that CBP "may or may not have access" to EID data "generated … by other agencies"). This point, however, is irrelevant to whether the EID datapoints that CBP *does* possess and control are CBP records. As explained above, DHS, ICE, and CBP have all consistently taken the position that they are.

Finally, to the extent that CBP suggests that it is entitled to summary judgment because its inability to access the entire EID renders it incapable of fulfilling Plaintiffs' request for *all* EID datapoints that are linked to certain individuals, *see id.* ¶¶ 15, 17, CBP is wrong. Under FOIA, "[a]n agency shall … consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible." 5 U.S.C. § 552(a)(8)(A)(ii)(I); *see ACLU Immigrants' Rights Project*, 58 F.4th at 654 (noting that the government bears the burden of demonstrating the inability to produce segregable portions of requested records). CBP's professed inability to produce all records that Plaintiffs seek does not relieve it of its obligation to produce the subset of responsive records that it can produce.

**C.** Furthermore, Plaintiffs' FOIA request seeks records that CBP is uniquely well positioned to produce. Part (2) of the request seeks EID datapoints "that are directly or indirectly linked to a person who was apprehended pursuant to a CBP 'encounter' in or after Fiscal Year 2020." Dkt. 39-5 at 2. As explained above, *see supra* p. 11, CBP publishes datasets of encounter-

12

by-encounter information drawn from the EID every month and therefore has a set of readily accessible lists that contain all of the individuals who are covered by Part (2) of the request.

Moreover, CBP has a specialized portal that permits it to query the EID and access datapoints related to the subject of a particular encounter. *See Privacy Impact Assessment* at 1–2; *see also, e.g.*, DHS, *Privacy Impact Assessment for the U.S. Customs and Border Protection Unified Secondary* at 30 (Dec. 16, 2020), https://tinyurl.com/5xnksscu (explaining that CBP can "query and view … [EID] information" to see whether the subject of an encounter "has had adverse action taken against them previously and to vet information provided by the [subject]"); GAO, *Border Patrol: Key Elements of New Strategic Plan Not Yet in Place to Inform Border Security Status and Resource Needs* at 45 (Dec. 2012), https://tinyurl.com/37m3djsv (describing CBP's query of "apprehensions and seizure data from the [EID]" that, among other things, offered "an overall view of cross-border illegal activity over time" and made it possible to "identify the number of repeat offenders"). Highlighting CBP's ability to identify and connect records related to a given encounter, CBP produces encounter-by-encounter datasets that note the number of prior encounters associated with each person in the dataset. *See* Long Decl. ¶ 16.

CBP's unique ability to produce encounter-linked records is particularly significant in this case. In support of ICE's motion for summary judgment, Dkt. 40, ICE argues that honoring Plaintiffs' FOIA request would be unduly burdensome because ICE "does not utilize or have access to any reporting methodologies used by CBP to define its Nationwide Encounters Dataset." Dkt. 40-3 ¶ 42. The fact that CBP *does* have a reporting methodology that it can use to query the EID in ways that ICE cannot only underscores that CBP exercises control over its EID records and so must produce those records in response to Plaintiffs' FOIA request.

II.    **Plaintiffs are entitled to summary judgment.**

Plaintiffs are entitled to summary judgment as to CBP on the present record. CBP does not dispute that Plaintiffs sought records under FOIA and that CBP has not produced any. It is therefore CBP's burden to justify withholding the records sought. *Seife*, 43 F.4th at 235. As explained above, *supra* Part I, the sole justification that CBP has offered fails as a matter of law. To be sure, Plaintiffs accept that "CBP does not have access to the entire EID database," Howard Decl. ¶ 11, and so may not be able to produce all records that are responsive to Plaintiffs' FOIA request. Indeed, that is precisely why Plaintiffs directed their request to ICE as well. But because *some* of the responsive records within the EID are CBP records, FOIA requires CBP to produce those records. *See ACLU Immigrants' Rights Project*, 58 F.4th at 653–54 (explaining that FOIA requires partial production in the event that full production is not possible). This Court should therefore grant summary judgment in favor of Plaintiffs and direct CBP to begin production.

III.    **In the alternative, a ruling on summary judgment should be deferred pending discovery.**

Alternatively, should this Court hold that fact disputes foreclose a grant of summary judgment in Plaintiffs' favor at this time, the Court should defer resolution of the parties' cross-motions until Plaintiffs have had an opportunity to conduct discovery into CBP's claimed defense. Plaintiffs served a set of discovery demands on CBP on October 31, 2024, at the authorization of Magistrate Judge Dancks, and CBP has not yet responded. *See* Sansone Decl. ¶¶ 16, 20. Under Federal Rule of Civil Procedure 56(d), this Court has discretion to defer ruling on CBP's summary judgment motion until the discovery process is complete, and there are strong reasons to exercise that discretion in Plaintiffs' favor here.

First, CBP's motion rests on factual representations that appear inconsistent with CBP's previous representations about its ownership and control over the data that it stores in the EID

and with CBP's past and current practice of using and disseminating that data. *See supra* Part I.B. In these circumstances, summary judgment should either be denied, or a ruling should await discovery. *See Carney*, 19 F.3d at 812 (explaining that a "showing of bad faith" or "tangible evidence" contradicting an agency's account can "justify discovery" in a FOIA case).

Second, the discovery served by Plaintiffs goes directly to factual disputes at the heart of CBP's summary judgment argument. Among other things, Plaintiffs seek information about the scope of CBP's access to records contained in the EID, the uses to which CBP puts those records, and the extent to which it can make unilateral decisions regarding the data it stores in the EID without consulting ICE. This discovery is clearly "relevant to [the parties'] claim[s] or defense[s] and proportional to the needs of the case," and is particularly appropriate given CBP's "access to relevant information." Fed. R. Civ. P. 26(b)(1).

Third, Plaintiffs have been diligent in pursuing discovery. *See Elliott*, 84 F.4th at 493 (listing a party's "effort … to obtain" discovery as a factor in the Rule 56(d) analysis (quoting *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013) (summary order))). At the time Plaintiffs filed suit, they had requested records under FOIA, and CBP had neither produced the records nor offered an explanation as to why it would not do so. *See* Sansone Decl. ¶ 4. In that posture, Plaintiffs agreed with CBP that targeted discovery demands could not be crafted until after CBP had come forward with a justification for withholding the records, *id.* ¶ 6, but Plaintiffs informed both CBP and the Court that they believed discovery would likely be necessary once CBP had come forward with its asserted justifications, *id.* ¶ 11; *see* Dkt. 35 at 2. CBP came forward with its asserted justifications for the first time when it filed its motion for summary judgment on October 1, 2024. *See* Sansone Decl. ¶ 13. Counsel for Plaintiffs met and

conferred with counsel for CBP within a week afterwards, and Plaintiffs put the issue of discovery before the Court just two days after that. *Id.* ¶ 15; *see* Dkt. 43.

Finally, allowing the discovery process to conclude before ruling on CBP's motion could conserve resources for the Court and for the parties. Even if this Court denies CBP's motion based on the present record, Plaintiffs expect that the question of CBP's degree of control over EID records will continue to recur if this Court also denies Plaintiffs' cross-motion for summary judgment and the litigation continues. Giving Plaintiffs the opportunity to build a complete evidentiary record around this issue at the outset will prevent this case from generating the cycles of motion practice that too often encumber FOIA litigation. *See, e.g.*, *Akel v. DOJ*, No. 20-cv-03240, 2024 WL 939974, at *2 (D.D.C. Mar. 4, 2024) ("The type of iterative process represented by this case—and all too many FOIA cases—constitutes a burden on the time [and] resources of all involved, and, more importantly, it is at odds with the statutory design, which attempts to foster expedition."). This Court should not invite such inefficiency.

## CONCLUSION

This Court should deny CBP's motion for summary judgment, grant summary judgment in favor of Plaintiffs, and order CBP to search for and produce its responsive records from the EID. In the alternative, this Court should defer ruling on CBP's motion until Plaintiffs have had the opportunity to conduct discovery and to supplement the record as appropriate.

Dated: November 8, 2024                    Respectfully submitted,

                                            /s/ Nicolas A. Sansone
                                            Nicolas A. Sansone (admitted pro hac vice)
                                            Michael T. Kirkpatrick (admitted pro hac vice)
                                            Public Citizen Litigation Group
                                            1600 20th Street NW
                                            Washington, DC 20009
                                            (202) 588-7714
                                            nsansone@citizen.org

                                            *Counsel for Plaintiffs*