UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN B. LONG and <br> TRAC REPORTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT and <br> U.S. CUSTOMS AND BORDER PROTECTION, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 5:23-cv-1564 (DNH/TWD) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF SUSAN B. LONG**

I, Susan B. Long, declare the following under penalties of perjury:

1. I am an Associate Professor of Managerial Statistics and the Co-Founder of the Transactional Records Access Clearinghouse (TRAC) at Syracuse University. I am one of the plaintiffs in this case.

2. I hold a doctorate in Sociology from the University of Washington, with a dual major in Quantitative Methods and Criminology. After receiving my doctorate, I completed postdoctoral studies in Statistics at Princeton University. I have been a Syracuse University faculty member since 1980, and I have taught undergraduate, graduate, and doctoral seminars in statistics and research methods. Over the years, I have also held positions as a visiting scholar at the U.S. Department of Justice's National Institute of Justice, the Bureau of Social Science Research, and the Center for Engineering Information at City University of London in England.

3. TRAC, which I co-founded in 1989, gathers, analyzes, and maintains a wealth of independent and nonpartisan information about the staffing, spending, and enforcement activities

1

of the federal government. As a scholarly research initiative, TRAC does not engage in advocacy. Nor does it take partisan positions of any kind. TRAC's purpose is to provide the American people—and institutions of oversight such as Congress, news organizations, public-interest groups, businesses, scholars, and lawyers—with comprehensive and regularly updated information that allows for meaningful assessment of whether federal agencies are actually doing what agency officials claim they are doing, and whether the agencies' actions are achieving the agencies' stated goals. In furtherance of TRAC's efforts to obtain comprehensive and regularly updated information on federal immigration enforcement, I have been submitting requests under the Freedom of Information Act (FOIA) to Defendant U.S. Customs and Border Protection (CBP) and other federal immigration agencies for decades, regularly seeking case-by-case records from their internal management databases.

4. TRAC data and studies have been cited by congressional leaders and news organizations in debates over gun control, tax policy, immigration, terrorism, official corruption, white-collar crime, and other law enforcement issues, and by government officials in support of policy changes. A 2024 report by the Congressional Budget Office on the demographic outlook of the United States used TRAC data to inform its estimate of net immigration, and researchers at the Federal Reserve are using TRAC data to support their internal policy research. Other institutions that have relied on TRAC data include the U.S. Government Accountability Office, the Congressional Research Service, and the U.S. Department of Homeland Security (DHS) itself in its 2017 implementing directive for the President's Executive Order on immigration enforcement. TRAC's findings on immigration matters are frequently cited in legal briefs and court decisions. Examples of TRAC's impact are available at https://trac.syr.edu/tracatwork.

5. As part of my continuing work on government transparency, I submitted a FOIA request to CBP on September 21, 2023, through the agency's online portal. Among other things, the request sought records from the Enforcement Integrated Database (EID), a database that contains information about the government's immigration enforcement activities. A true and correct copy of the request is docketed in this case at Docket Number 39-4.

6. CBP did not respond to my FOIA request, so I filed this lawsuit on December 12, 2023.

7. Over the first several months of this litigation, I indicated to CBP multiple times that I was willing to work collaboratively to find ways to facilitate production of the requested records. I also offered settlement proposals that reduced the volume of records sought in the hopes of encouraging an expeditious resolution of the case. At no point did CBP offer any counterproposal or take up my suggestion that we engage in a candid discussion about any difficulties CBP perceived with my request so that we could brainstorm possible solutions.

8. After it became clear that settlement was not a realistic possibility, I decided to abandon portions of my FOIA request in order to narrow the scope of the issues in the case. I conveyed this intention to CBP through counsel in a letter dated August 1, 2024, and I understand that CBP views the letter as the operative FOIA request for all present purposes. A true and correct copy of this letter is docketed in this case at Docket Number 39-5.

9. I understand that CBP has moved for summary judgment on the grounds that the EID is owned by U.S. Immigration and Customs Enforcement (ICE) and so does not contain CBP records. I have reviewed the declaration that CBP has filed in support of its motion, and I believe that CBP's argument in this case is flatly inconsistent with the way that CBP, DHS, and ICE have historically understood and treated the contents of the EID.

10. To take one example, I have previously described a March 25, 2011, phone call that I had with ICE in connection with a 2010 FOIA request seeking data from the EID. *See* Second Decl. of Susan B. Long ¶ 13, *Long v. ICE*, No. 1:14-cv-00109 (D.D.C.), Dkt. 27-1 (filed Mar. 30, 2015). During that phone call, ICE expressly stated that, "while the agency owns the EID for operational purposes, it does not own all of the fields in the EID database." *Id.*

11. Shortly afterwards, I received an email from the Office of Government Information Services, which had arranged my call with ICE. This email reported that ICE was "working with CBP [so] that the two offices could respond to [my FOIA] request in one release." One reason given for the need for inter-agency collaboration was that some of the EID's "data fields … [were] not ICE-owned." A true and correct copy of the email is attached as Exhibit E.[1]

12. I subsequently received a letter from CBP dated December 12, 2011, confirming that "ICE [had] requested CBP conduct a search for responsive records maintained by CBP." A true and correct copy of this letter is attached as Exhibit F. CBP's search resulted in responsive records drawn from the EID, which CBP produced to me.

13. On many occasions since then, ICE has informed me that the EID information it provides is limited to ICE activity and that CBP is responsible for responding to requests for EID information that concerns CBP activities, even though both agencies may be involved in the arrest and removal of the same individuals and even though the associated data is all stored together in the EID. For example, in a November 26, 2013, letter, ICE responded to one of my FOIA requests for EID data by informing me that "the information [I was] seeking [was] under the purview of [CBP]" and by "referring [my] request to the FOIA Officer for [CBP]." A true and correct copy of this letter is attached as Exhibit G.

---

[1] The exhibits to my declaration follow sequentially from the exhibits to the Declaration of Nicolas A. Sansone.

14. In addition, CBP regularly makes public productions of EID data pertaining to CBP's enforcement activities. For example, on July 29, 2013, in response to one of my FOIA requests, CBP produced an extract of data from a set of apprehension records. The records expressly identified the EID as the "Data Source." A true and correct copy of an excerpt from the data extract is attached as Exhibit H.

15. More recently, CBP produced a data extract of U.S. Border Patrol apprehensions that took place between October 1, 2017, and December 31, 2017. The EID was listed as the "Data Source." A true and correct copy of an excerpt from this data extract is attached as Exhibit I.

16. On at least one occasion, CBP provided me with an encounter-by-encounter dataset that indicated the number of prior encounters associated with each noncitizen in the dataset.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 7, 2024

Respectfully submitted,

Susan B. Long