UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN B. LONG and<br>TRAC REPORTS, INC.,<br><br>                Plaintiffs,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT and<br>U.S. CUSTOMS AND BORDER<br>PROTECTION,<br><br>                Defendants. | No. 5:23-cv-1564 (DNH/TWD) |

**DECLARATION OF SUSAN B. LONG**

I, Susan B. Long, declare the following under penalties of perjury:

1. I am an Associate Professor of Managerial Statistics and the Co-Founder of the Transactional Records Access Clearinghouse (TRAC) at Syracuse University. I am one of the plaintiffs in this case.

2. I hold a doctorate in Sociology from the University of Washington, with a dual major in Quantitative Methods and Criminology. After receiving my doctorate, I completed postdoctoral studies in Statistics at Princeton University. I have been a Syracuse University faculty member since 1980, and I have taught undergraduate, graduate, and doctoral seminars in statistics and research methods. Over the years, I have also held positions as a visiting scholar at the U.S. Department of Justice's National Institute of Justice, the Bureau of Social Science Research, and the Center for Engineering Information at City University of London in England.

3. TRAC, which I co-founded in 1989, gathers, analyzes, and maintains a wealth of independent and nonpartisan information about the staffing, spending, and enforcement activities

1

of the federal government. As a scholarly research initiative, TRAC does not engage in advocacy. Nor does it take partisan positions of any kind. TRAC's purpose is to provide the American people—and institutions of oversight such as Congress, news organizations, public-interest groups, businesses, scholars, and lawyers—with comprehensive and regularly updated information that allows for meaningful assessment of whether federal agencies are actually doing what agency officials claim they are doing, and whether the agencies' actions are achieving the agencies' stated goals. In furtherance of TRAC's efforts to obtain comprehensive and regularly updated information on federal immigration enforcement, I have been submitting requests under the Freedom of Information Act (FOIA) to Defendant U.S. Immigration and Customs Enforcement (ICE) and other federal immigration agencies for decades, regularly seeking case-by-case records from their internal management databases.

4. TRAC data and studies have been cited by congressional leaders and news organizations in debates over gun control, tax policy, immigration, terrorism, official corruption, white-collar crime, and other law enforcement issues, and by government officials in support of policy changes. A 2024 report by the Congressional Budget Office on the demographic outlook of the United States used TRAC data to inform its estimate of net immigration, and researchers at the Federal Reserve are using TRAC data to support their internal policy research. Other institutions that have relied on TRAC data include the U.S. Government Accountability Office, the Congressional Research Service, and the U.S. Department of Homeland Security itself in its 2017 implementing directive for the President's Executive Order on immigration enforcement. TRAC's findings on immigration matters are frequently cited in legal briefs and court decisions. Multiple examples of TRAC's impact are available at https://trac.syr.edu/tracatwork.

5. As part of my continuing work on government transparency, I submitted a FOIA request to ICE on September 21, 2023, through the agency's online portal. Among other things, the request sought records from the Enforcement Integrated Database (EID), a database that contains information about the government's immigration enforcement activities. A true and correct copy of the request is docketed in this case at Docket Number 40-5.

6. ICE did not respond to my FOIA request, so I filed this lawsuit on December 12, 2023.

7. Over the first several months of this litigation, I indicated to ICE multiple times that I was willing to work collaboratively to find ways to facilitate production of the requested records. I also offered settlement proposals that reduced the volume of records sought in the hopes of encouraging an expeditious resolution of the case. At no point did ICE offer any counterproposal or take up my suggestion that we engage in a candid discussion about any difficulties ICE perceived with my request so that we could brainstorm possible solutions.

8. After it became clear that settlement was not a realistic possibility, I decided to abandon portions of my FOIA request in order to narrow the scope of the issues in the case. I conveyed this intention to ICE through counsel in a letter dated August 1, 2024, and I understand that ICE accepts that this letter is the operative FOIA request for all present purposes. A true and correct copy of this letter is docketed in this case at Docket Number 40-7.

9. I understand that ICE has moved for summary judgment, and I have reviewed the declarations that ICE has filed in support of its motion. I do not believe that the declarations justify ICE's refusal to produce any records in response to my request. This belief is based on my long experience with ICE and the EID, including my participation in prior FOIA litigation against ICE, and my familiarity with materials that ICE regularly makes publicly available.

**Structure and Contents of the EID**

10. I have previously submitted FOIA requests to ICE on many occasions for data contained in the EID. Through my FOIA requests, I have grown familiar with aspects of the EID. As the government described the EID in a prior FOIA lawsuit to which I was a party:

> [The EID] is a collection of related information stored in a computer file in an organized fashion. The information, or data, is organized in such a way that it can easily be managed, updated, and searched for specific information.
>
> Information within [the EID] is organized into *database tables*. These tables are organized into rows and columns. A row is equivalent to a single record. Each record is a collection of information about a specific person or event, depending on the topic ("entity") around which the table is organized. Each piece of information ("column") within the row is referred to as a "field" or "data element."

Miller Decl. ¶¶ 7–8, *Long v. ICE*, No. 1:14-cv-00109 (D.D.C.), Dkt. 17-1 (filed Oct. 9, 2014).

11. On April 3, 2024, ICE provided me with the EID's "data dictionary" as part of a FOIA case I filed in the U.S. District Court for the District of Columbia. *See* Joint Status Report ¶ 3, *Long v. ICE*, No. 1:22-cv-02655 (D.D.C.), Dkt. 31 (filed Sept. 18, 2024). The data dictionary purports to identify each table and each field (*i.e.*, each column) contained in the EID. To provide an example, a copy of three of the data dictionary's 10,128 entries is attached as Exhibit K.[1] As I read the first entry, it indicates that there is a table inside the EID with the name "CSE," which contains "[a] set of information related to the removal of an alien." As I read the second and third entries, they indicate that the "CSE" table contains fields with the names "CSE_250_REMOVE_IND" and "CSE_252B_REMOVE_IND," which can each be filled with "[a]n alphanumeric symbol" to indicate that the noncitizen to which a particular record relates "was removed" under a particular provision of the Immigration and Nationality Act (INA).

---

[1] The exhibits to my declaration follow sequentially from the exhibits to the Declaration of Nicolas A. Sansone.

4

12. The EID data dictionary shows that the EID contains 849 tables and 9,279 data fields.

13. The EID includes two different kinds of tables: data tables and code tables. A data table contains substantive information relevant to the government's immigration enforcement efforts, with each row in the table relating to a particular subject (*e.g.*, a particular individual, action, or event). A code table contains the definitions of codes used in the data tables, with each row containing a code and its meaning. On May 14, 2024, July 23, 2024, and September 18, 2024, as part of the above-referenced District of Columbia litigation, ICE provided me with partially redacted copies of many of the EID's code tables. As an example, a copy of one of the released code tables is attached as Exhibit L. As I read the table, the first field of information is a code, such as "IP" or "UP," that is used in an EID data table. The second field of information is the code's definition: "Initiated Prosecution" in the case of "IP" and "Updated Prosecution" in the case of "UP." The fourth and sixth fields of information reflect the dates and times at which each code was created and (where applicable) updated. The third and fifth fields of information identify the EID users who created and (where applicable) updated the code.

14. Based on the materials that ICE has released to me, I have been able to determine which of the EID's 849 tables are data tables and which are code tables. Within the EID data dictionary, code tables typically end in "CD" or "CDS" to distinguish them from data tables. And where nonstandard naming conventions are used in the data dictionary, I have been able to check whether a particular table that does not end in "CD" or "CDS" was among the tables that ICE released to me as code tables. Through this process, I have concluded that out of the total of 849 tables listed in EID's Data Dictionary, the EID contains at least 450 code tables. This means that the remaining tables—no more than 399—are data tables.

15. Part (1) of the operative FOIA request seeks all datapoints (from any time) that are directly or indirectly linked to a person for whom ICE has established an official case seeking that person's removal from the country. The starting point for this request would be a single EID table known as the "CSE" table. Based on my review of the data dictionary that was released to me on April 3, 2024, I was able to identify the fields that are contained in the "CSE" table and pull them together into a single document. That document is attached as Exhibit M. Most of the information in Exhibit M is pulled directly from the data dictionary that was released on April 3, 2024. Where an asterisk follows the name of a field, the relevant entry in the data dictionary was redacted, but I was able to identify the field based on an earlier version of the data dictionary that ICE had previously released to me. *See* Fifth Long Decl. ¶¶ 15–17 & Exh. PPP, *Long v. ICE*, No. 1:14-cv-00109 (D.D.C.), Dkts. 105-1, 105-2 (filed Apr. 19, 2023).

16. I understand that when the government decides to create a case seeking a particular noncitizen's removal from the country, it creates a record for the case in the "CSE" table. The "CSE" table contains 32 fields, at least 31 of which do not identify the person targeted in the case directly or indirectly.[2] The "CSE" table instead contains information about the nature and progress of the case. Specifically, 12 out of the 32 fields contain (where applicable) coded entries that record various pieces of case information, such as whether removal is being sought under particular provisions of the INA and whether the case is currently active. An additional eight fields contain (where applicable) dates of significance to the case, such as the date on which the case originated and the date on which the case culminated in a final order. One field provides space for the government to input a narrative explanation if a final removal order cannot be executed. Six fields contain numerical entries that allow a case to be directly linked to other

---

[2] The nature of the remaining field was redacted in the most recently released data dictionary, and the field was not included in earlier versions of the data dictionary that I have seen.

tables within the EID. Four fields contain information—often called "audit trail information"—about when the record was added to the table, when it was last modified, and who created and last modified the record. I have been unable to identify the remaining field.

**Prior Releases of Case-by-Case Information from ICE**

17. As explained above, I regularly submit FOIA requests seeking data from ICE. In response to these requests, ICE has released millions upon millions of case-by-case records. In the released records, fields that contain information that directly identifies a particular noncitizen—such as name or official "alien" number—are redacted, as are fields that could clearly aid in indirect identification, such as birth date. Not all person-specific information is redacted, though. For example, while birth date is redacted, birth *year* typically is not.

18. To present just one example, on May 17, 2010, I submitted a FOIA request to ICE, seeking "anonymous alien-by-alien data" for "individuals arrested, detained, charged, returned or removed" since October 1, 2004. An attachment to the request specified 60 items of information that I sought with respect to each individual, including person-specific information such as gender, age, nationality, and marital status.[3] While the request noted that the information "may be maintained in separate but linked tables," the request asked that ICE's production "retain this linked table structure, allowing [me] to associate the information … together for each anonymous individual and his or her background." A true and correct copy of the FOIA request and its attachment is attached as Exhibit N.

19. ICE responded to my request by letter dated December 20, 2011. As the letter explains, ICE produced the data requested in linked tables. ICE "added a column to each table … which contain[ed] a random number generated by [ICE] as [it] produced the data." This number

---

[3] Although the attachment appears to list only 45 numbered items, two of the items contain multiple subparts, which brings the total to 60.

could be used to "track information about a particular alien across the various tables." Of the datapoints released for each noncitizen, ICE redacted only two due to concerns that they "could be used to identify the individual [to] whom the information pertains." A true and correct copy of ICE's letter is attached as Exhibit O.

20. This sort of release is typical of ICE, and I have received many person-by-person releases of information from ICE over the years, containing many unredacted fields of information related to each person. This is true for other FOIA requesters as well. For example, I am aware of a 2012 case that was filed by the American Immigration Council in the U.S. District Court for the District of Connecticut, in which the U.S. Department of Homeland Security agreed to release person-by-person records containing over 100 stipulated fields of information related to each person. *See* Joint Stipulation & Order of Settlement & Dismissal, *Am. Immigration Council v. DHS*, No. 3:12-cv-00355 (D. Conn.), Dkt. 44 (filed July 31, 2013). A true and correct copy of the list of stipulated fields is attached as Exhibit P.

21. ICE's regular releases of case-by-case records have continued during the pendency of this lawsuit. These releases contain large amounts of case-by-case information for millions of cases. On May 3, 2024, for example, in response to one of my FOIA requests, ICE released "alien-by-alien" records for all individuals who were in ICE custody "at any point" during Fiscal Year 2019 and thereafter. To produce these records, ICE copied the data onto digital storage media and sent the physical media to me through the U.S. mail. ICE did not use the SecureRelease Portal. According to ICE's letter related to this release, the cost of processing the request was less than $25. A true and correct copy of this letter is attached as Exhibit Q.

22. The released data contained over 3 million records, with each record corresponding to a particular individual and each record containing an "Alien Number Unique Identifier" that ICE

8

had created to allow all records related to the same individual to be linked. Each record contained 78 unredacted fields of information pertaining to each individual. Some of these fields contained person-specific information, including gender, birth country, citizenship country, race, ethnicity, birth year, whether the individual was an unaccompanied juvenile, family status, date of entry into the United States, and time spent illegally in the United States, and 27 of these fields detailed each individual's criminal history, including the individual's most serious pending charge and the length of the individual's most serious criminal sentence. The fields also included specific information on the date and location of the individual's apprehension, the date and time that the individual was booked into or released from a detention facility, and the name and location of the detention facility. I have compiled a list of the person-by-person fields that were released in ICE's May 3, 2024, production. The 78 fields colored blue were unredacted, and only the nine fields colored red were redacted. The list I compiled is attached as Exhibit R.

23. Of particular relevance here, ICE responded on April 10, 2024, to another set of my FOIA requests by transmitting to me through its SecureRelease Portal "anonymous case by case information" regarding each individual whom ICE successfully deported between Fiscal Year 2015 and August 2023. These cases represent a subset of the cases contained in the "CSE" table that forms the basis for Part (1) of the operative FOIA request in this case. Here too, ICE's letter responding to the requests represented that the cost of processing the requests was less than $25. A true and correct copy of this letter is attached as Exhibit S.

24. The released data contained records related to nearly 1.8 million individuals, with 124 fields of unredacted information pertaining to each individual. These fields included extensive person-specific information, including gender, birth country, birth state, birth city, citizenship country, race, ethnicity, birth year, whether the individual belonged to a criminal street gang,

9

date of entry into the United States, and time spent illegally in the United States, and 22 of these fields detailed each individual's criminal history, including the individual's most serious pending charge and the length of the individual's most serious pending criminal sentence. The majority of the fields, however, contained information on the government's own immigration enforcement actions, including the date, location, and method of apprehension, details regarding the individual's detention date and location, and information about the individual's removal from the country. I have compiled a list of the person-by-person fields that were released in ICE's April 10, 2024, production. The 124 fields colored blue were unredacted, and only the six fields colored red were redacted. The list I compiled is attached as Exhibit T.

25. ICE routinely provides code translations with its releases of data. These are sometimes provided as tables with a list of the codes in one column and the translation of each code's meaning in an adjacent column. Other times, ICE incorporates code translations into the released data tables themselves. For example, in Exhibit T, one field corresponds to "Port of Departure" and the adjacent field corresponds to "Port of Departure Code." In the released records, the "Port of Departure Code" field would contain a coded reference to a particular port of departure, and the adjacent "Port of Departure" field would contain the name of that port of departure in plain English.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 7, 2024

Respectfully submitted,

Susan B. Long