## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

SUSAN B. LONG,
DAVID BURNHAM, and
TRAC REPORTS, INC.

              Plaintiffs,

         v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, and
U.S. CUSTOMS AND BORDER
PROTECTION,

              Defendants.

Civil Action No.:    5:23-cv-01564
                       (DNH/TWD)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## U.S. CUSTOMS AND BORDER PROTECTION'S
## MOTION FOR SUMMARY JUDGMENT
## AND IN OPPOSITION TO PLAINTIFFS'
## CROSS-MOTION FOR SUMMARY JUDGMENT

---

                           CARLA B. FREEDMAN
                           United States Attorney

By:    David M. Katz
         Assistant United States Attorney
         100 South Clinton Street
         Syracuse, New York 13202

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.      The Requested EID Data Does Not Constitute Agency Records of CBP. ............. 2

    II.     Plaintiffs are Not Entitled to Summary Judgment. ................................................ 16

    III.   Plaintiffs Did Not Establish a Reason to Order Discovery Here. ......................... 17

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Ajluni v. F.B.I.*,
    947 F. Supp. 599 (N.D.N.Y. 1996) .......................................................................... 17, 20

*Alyeska Pipeline Serv. Co. v. E.P.A.*,
    856 F.2d 309 (D.C. Cir. 1988) ........................................................................................ 7

*Amnesty Int'l USA v. C.I.A.*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) .......................................................................... 15

*Beltranena v. Clinton*,
    770 F. Supp. 2d 175 (D.D.C. 2011) ............................................................................. 19

*Bloeser v. D.O.J.*,
    811 F. Supp. 2d 316 (D.D.C. 2011) ............................................................................. 15

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
    769 F.2d 919 (2d Cir. 1985) ........................................................................................ 17

*CareToLive v. F.D.A.*,
    631 F.3d 336 (6th Cir. 2011) ................................................................................... 7, 18

*Carney v. D.O.J.*,
    19 F.3d 807 (2d Cir. 1994) ................................................................................. 2, 18, 19

*Cause of Action Institute v. Office of Management and Budget*,
    10 F.4th 849 (D.C. Cir. 2021) .............................................................................10, 11, 12

*Evans v. B.O.P.*,
    951 F.3d 578 (D.C. Cir. 2020) ..................................................................................... 16

*Frank v. D.O.J.*,
    941 F. Supp. 4 (D.D.C. 1996) ...................................................................................... 16

*Gallant v. N.L.R.B.*,
    26 F.3d 168 (D.C. Cir. 1994) ....................................................................................... 12

*Heily v. Dep't of Comm.*,
    69 F. App'x 171 (4th Cir. 2003) .................................................................................. 19

*Jarvik v. C.I.A.*,
    741 F. Supp. 2d 106 (D.D.C. 2010) ................................................................ 17, 18, 19

*Jud. Watch, Inc. v. D.O.J.*,
    102 F. Supp. 2d 6 (D.D.C. 2000) ................................................................................. 17

*Judicial Watch, Inc. v. Federal Housing Finance Agency*,
    646 F.3d 924 (D.C. Cir. 2011) ........................................................................ 13

*Kayll v. United States Department of Homeland Security*,
    2024 WL 81231 (D.D.C. Jan. 8, 2024) ..................................................... 13, 14

*Lane v. Dep't of Interior*,
    523 F.3d 1128 (9th Cir. 2008) ....................................................................... 19

*Long v. I.C.E.*,
    464 F. Supp. 3d 409 (D.D.C. 2020) ............................................................... 16

*Nurse v. Sec'y of Air Force*,
    231 F. Supp. 2d 323 (D.D.C. 2002) ............................................................... 15

*Pulliam v. E.P.A.*,
    292 F. Supp. 3d 255 (D.D.C. 2018) ............................................................... 20

*Reich v. D.O.E.*,
    784 F. Supp. 2d 15 (D. Mass. 2011) ............................................................. 19

*Ruotolo v. D.O.J.*,
    53 F.3d 4 (2d Cir. 1995) ................................................................................. 20

*SafeCard Servs., Inc. v. S.E.C.*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................... 6, 7

*Schaerr v. D.O.J.*,
    69 F.4th 924 (D.C. Cir. 2023) ......................................................................... 2

*Shays v. F.E.C.*,
    424 F. Supp. 2d 100 (D.D.C. 2006) ............................................................... 16

*Sheridan v. Dep't of the Navy*,
    9 F. App'x 55 (2d Cir. 2001) ......................................................................... 15

*Span v. D.O.J.*,
    696 F. Supp. 2d 113 (D.D.C. 2010) ................................................................. 2

*Tax Analysts v. I.R.S.*,
    410 F.3d 715 (D.C. Cir. 2005) ....................................................................... 19

*Williams v. Ashcroft*,
    30 F. App'x 5 (D.C. Cir. 2002) ..................................................................... 15

## PRELIMINARY STATEMENT

FOIA does not require an agency to produce records that it does not possess or control. This common-sense principle flows from the statute, which refers only to "agency records." *See* 5 U.S.C. § 552. Plaintiffs have made an explicit request for "the contents of the EID," and, more specifically, "all datapoints (from any time)" related to two sets of individuals as stored in the EID, as well as records regarding EID codes and lookup tables. The data Plaintiffs seek from the EID are contained in the EID, which ICE owns and operates. Complying with Plaintiffs' request would require CBP to control the EID and all of the data within the EID as requested by Plaintiffs. But CBP lacks control over the EID and the requested EID data. Therefore, CBP cannot provide Plaintiffs with the EID data they seek. Indeed, CBP's capabilities as it relates to the data within the EID are limited. CBP only has an indirect ability to provide information through CBP systems or applications. Therefore, Plaintiffs' FOIA request did not trigger CBP's FOIA obligations.

CBP met its initial burden by submitting a declaration—which is entitled to a presumption of good faith—establishing CBP does not possess or control the requested EID data. Moreover, ICE confirmed that it owns, operates, and maintains the EID. Plaintiffs do not dispute that ICE owns, operates, and maintains the EID. Plaintiffs also do not offer any evidence to dispute CBP's limited authority to use data from the EID for limited purposes. Plaintiffs have not raised a genuine issue of material fact on a dispositive issue here: CBP does not possess or control the EID or the data Plaintiffs request from the EID.

Plaintiffs' opposition rests on two fallacious factual assertions. First, Plaintiffs' papers conflate CBP's ability to transmit data to the EID, or access EID data through applications or systems, with CBP's ability to produce EID data directly from within the EID itself. Second, Plaintiffs' papers conflate CBP's limited ability to create or access data from the EID with CBP

having possession or control over the data Plaintiffs request from within the EID. For the same reasons, Plaintiffs failed to meet their initial burden on their cross-motion for summary judgment.

Plaintiffs' request for discovery similarly fails. Plaintiffs have no right to engage in discovery here. Indeed, discovery is a last resort in FOIA cases and can only be triggered by a judicial finding that it is warranted. Plaintiffs failed to support their request beyond speculative statements and equivocations, which do not rise to the level required to order discovery here.

Therefore, this Court should grant CBP's motion for summary judgment, deny Plaintiffs' cross-motion for summary judgment, and deny Plaintiffs' alternative request to allow Plaintiffs to engage in discovery prior to deciding CBP's motion for summary judgment.

## ARGUMENT

### I.    The Requested EID Data Does Not Constitute Agency Records of CBP.

In a FOIA case, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with reasonably specific detail; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. D.O.J.*, 69 F.4th 924, 929 (D.C. Cir. 2023) (citations omitted). "Affidavits submitted by an agency are accorded a presumption of good faith." *Carney v. D.O.J.*, 19 F.3d 807, 812 (2d Cir. 1994). "[B]oilerplate allegations of bad faith do not constitute the specific facts required to threaten the good faith presumption." *Span v. D.O.J.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

Here, Plaintiffs and CBP agree that "agency records are documents that an agency (1) either creates or obtains ***and*** (2) controls at the time the FOIA request is made." *Compare* Dkt. # 39-1 at 5 (CBP) *with* Dkt. # 46-1 at 6 (Plaintiffs) (emphasis added). CBP has described how and why it does not create or control the EID data Plaintiffs seek with reasonably specific detail. Plaintiffs have not come forth with evidence controverting CBP's explanations or evidence of bad faith. Instead, Plaintiffs misapprehend the relevant facts and misinterpret the relevant legal principles.

Simply, the data as requested in Plaintiffs' operative FOIA request was not created by CBP and was not within CBP's control at the time the request was made, and thus the records are not CBP Agency records.

>   **A.  CBP Did Not Create All Datapoints Directly or Indirectly Linked to the Specified Individuals Within the EID, or EID Code Files or Lookup Tables.**

Plaintiffs seek "all datapoints (from any time) that are directly or indirectly linked" to two sets of individuals in the EID. Plaintiffs seek this information directly from EID itself. Plaintiffs also seek EID "code files or look up tables." CBP can transmit certain data to the EID through CBP applications. Dkt. # 39-6 ¶ 10. Indeed, CBP utilizes the e3 portal to collect and transmit "biographic information for storage in ICE's EID." Katz Reply Decl., Exh. **"B"** at 1 ("e3 PIA"); Metzger Decl. ¶ 7. After CBP transmits the information to the EID, its users can access or change that data only through certain means and as "appropriate for their official duties." Katz Reply Decl., Exh. **"A"** at 13 ("EID PIA"). CBP accesses or modifies data stored in the EID via CBP applications, such as e3. Metzger Decl. ¶ 7. The data stored in the EID may no longer even reflect the data as initially transmitted by CBP because other users can make changes as well.

Plaintiffs imply CBP's ability to transmit certain data to the EID through the e3 portal is tantamount to creating records in the EID. But the question is not whether CBP can transmit *some* information that is then stored in the EID. The question is whether CBP created the data sought in Plaintiffs' FOIA request: "[a]ll datapoints (from any time) that are directly or indirectly linked" to certain individuals from within the EID. CBP did not create *all* of that data. At best, CBP transmitted *some* of the information. But any information provided by ICE or another agency or component—even pertaining to an individual that CBP has encountered—may appear in relation to the same individual because the EID is a common database repository for several DHS components. Second, because CBP data, once transmitted to the EID, can be modified by other

EID users, the data as it appears within the EID may not exist in the EID as originally transmitted by CBP. Third, Plaintiffs do not contest that CBP did not create any EID "code files or look up tables" as requested by Plaintiffs, and rather states it is "irrelevant." Dkt. # 46-1 at 9, n.3.

### B. CBP Does Not Control All Datapoints Directly or Indirectly Linked to the Specified Individuals From Within the EID, or EID Code Files or Lookup Tables.

Here, Plaintiffs have not requested data from within CBP applications or systems. Instead, Plaintiffs have requested data sourced directly from within the EID. This distinction is critical. While CBP obtains snapshots of portions of the EID data for its purposes (and as allowed by ICE), CBP does not control the data as it resides within the EID. Even if CBP could be said to have created "[a]ll datapoints (from any time) that are directly or indirectly linked" to certain individuals from within the EID—which it undisputably does not—the EID data Plaintiffs request were not within CBP's possession or control when Plaintiffs made their FOIA request. Indeed, Plaintiffs have failed to offer any *evidence* rebutting the statements in CBP's declaration establishing CBP does not possess or control the EID or its data. Instead, Plaintiffs make the sweeping—but incorrect—assertion that CBP has control over the EID because it can access information from the EID through applications. CBP has never disputed—and indeed acknowledges—it has limited access to certain EID data. Plaintiffs' assertion oversimplifies and distorts the facts and the law.

CBP accesses the EID through CBP's applications. Metzger Decl. ¶ 7. Indeed, "EID is the repository for all records created, updated, and accessed *by a number of software applications* collectively referred to as the 'ENFORCE applications.'" Katz Reply Decl. Exh. **"A"** at 2 (emphasis added); *id.* at 7 ("The EID *maintains information* that is *collected and used by the ENFORCE applications . . .*" (emphasis added)). Moreover, "[a]s an alleged immigration violator (i.e., subject) moves through the enforcement process, DHS personnel create, modify, and access the data stored in the EID's central data repository *using different ENFORCE applications.*" *Id.* at

2 (emphasis added).

Additionally, as CBP explained in its initial papers, CBP can access certain EID data limited in scope, and only as relevant to CBP's mission. Howard Decl., ¶ 11; *see also* Katz Reply Decl. Exh. **"A"** at 17 ("EID data is accessible by various personnel at CBP, USCIS, US-VISIT, and U.S. Coast Guard who are granted EID user accounts to assist them in performing their missions. Moreover, these agencies only have access to the EID applications and data that are relevant to their respective missions and authorities."). Moreover, at the user level, "EID and the ENFORCE applications further restrict users' access to specific functions based on the role assigned them." *Id.* at 26; *see also id.* at 28 ("In addition, the ENFORCE applications have a robust set of access controls including role-based access and interfaces, which limit individuals' access to only the data to which they should have access.").

CBP's limited ability to make changes to information after it has been transmitted to the EID underscores CBP's lack of control over the data. CBP has the ability to modify data in EID through CBP's own applications, such as e3. Katz Reply Decl. Exh. **"B"** at 2 ("The e3 portal . . . serves as a method for USBP agents to add or modify information within EID."). The e3 portal is a transactional interface through which CBP Border Patrol may change or modify data within the EID. Metzger Decl. ¶ 7.

Moreover, as relevant to Plaintiffs' FOIA request, CBP's access to information derived from the EID is governed by intermediary applications or systems. Metzger Decl. ¶ 9. CBP utilizes separate, intermediary systems and applications, which operate independently of the EID, when it seeks information derived from the EID.  *Id.* For example, CBP's Border Patrol Enforcement Tracking System, BPETS/BPETS2, contains "aggregated statistical data (calculated numbers, not transactional records) from database snapshots of CBP data in the U.S. Immigration and Customs

Enforcement (ICE) Enforcement Integrated Database (EID) for incident and enforcement trends and reporting." Katz Decl. Exh. **"D"**; *see also* Metzger Decl. ¶ 9. Simply, when CBP obtains data from the EID, it does so through a "snapshot" of a subset of EID data that is imported into CBP's applications where CBP can access it for reporting purposes. Metzger Decl. ¶ 8. The data itself is not removed from the EID. *Id.*  Moreover, the data may be updated in the EID at any time but it will not be updated in the snapshot. *Id.* Data labeled as "unofficial" EID, such as those Plaintiffs provide annexed to their motion as Exhibits H (Dkt # 46-11) and I (Dkt # 46-12), reflects this process. *Id.* ¶ 10. That data was not provided directly from within the EID. *Id.* ¶ 13.

Plaintiffs' opposition does nothing to change the analysis. Plaintiffs ask this Court to hold that CBP must provide EID data despite providing no evidence controverting CBP's showing that it cannot query or produce data directly from within the EID. Plaintiffs' position fails as a matter of common sense, and as a matter of law. The FOIA does not require CBP "to recreate or to reacquire a document that it no longer has." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). To that end, CBP has no obligation to produce a document where, as here, CBP "is no longer in possession of the document, for a reason that is not itself suspect." *Id.* Under these circumstances, "the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it." *Id.*

As discussed at length in CBP's initial papers, CBP does not control data subsequent to it being transmitted to the EID.

**C. Plaintiffs' Self-Serving Declarations and Misinterpretation of FOIA Principles Do Not Alter the Conclusion that the Records Requested are Not CBP Agency Records.**

"[C]onclusory allegations . . . are insufficient to create a material question of fact precluding summary judgment." *CareToLive v. F.D.A.*, 631 F.3d 336, 341 (6th Cir. 2011). This principle holds true even if "these assertions may be true," where "there is no factual evidence in the record supporting them." *Id.* at 343; *see also id.* ("[T]herefore, CareToLive did not meet its burden of coming forth with evidence to rebut the FDA's showing.").

Plaintiff Long's self-serving Declaration provides only conclusory statements reaffirming her personal beliefs as to CBP's control over the EID and its data. Indeed, at the end of her Declaration Plaintiff Long stated "[o]n at least one occasion, CBP provided me with an encounter-by-encounter dataset that indicated the number of prior encounters associated with each noncitizen in the dataset." Dkt. # 46-7 ¶ 16. Plaintiff Long does not claim this unattached and unidentified "dataset" came from within the EID (nor could she). Indeed, Plaintiff Long does not even attempt to explain the context for this vague statement.

Plaintiff Long's potpourri of anecdotal "evidence" and isolated documents ultimately amounts to nothing more than a self-serving, vague, and decontextualized discussion of FOIA requests Plaintiffs submitted more than a decade ago. But Plaintiffs cannot meet their burden in opposition by claiming "inconsistencies" that amount to nothing more than "trivial matters," including "minor ambiguities." *SafeCard Servs.*, 926 F.2d at 1202. "[A] motion for summary judgment adequately underpinned is not defeated simply by a bare opinion or an unaided claim that a factual controversy persists." *Alyeska Pipeline Serv. Co. v. E.P.A.*, 856 F.2d 309, 314 (D.C. Cir. 1988). Plaintiffs also cannot defeat summary judgment here through "supposed conflicts between the two affidavits [that] turn out to be illusory." *Id.*

For example, Plaintiff Long refers to a phone call she allegedly had with ICE "in connection with a 2010 FOIA request." Dkt. # 46-7 ¶ 10. Plaintiff Long then goes on to describe and attach a single isolated email from the National Archives & Records Administration—not ICE or CBP—devoid of any context. Dkt. # 46-8. The email never references the EID, but rather references IIDS. *Id.* Next, Plaintiff Long refers to a December 12, 2011, letter from CBP—which merely acknowledged receipt of a referral from ICE of FOIA request for "information covering individuals arrested, detained, charged, retuned, or removed" for a certain time period—that makes no reference to the EID. Dkt. # 46-9. Likewise, Plaintiff Long refers to a November 26, 2013 letter from ICE, again acknowledging receipt of a FOIA request. Dkt. # 46-10. While the letter referred the FOIA request to CBP, nothing in the letter establishes ICE referred the matter to CBP because CBP produces data directly from the EID. *Id.* To the contrary, the letter recites part of the FOIA request (which Long did not attach to her declaration), which includes information from "U.S. Customs and Border Protection data repositories/data warehouses/data marts." *Id.*

Plaintiff Long also provides portions of two "productions" of information that CBP has made in the past. Dkt. # 46-11; Dkt. # 46-12. Plaintiff Long does not explain the context of these "productions," which renders the productions useless to support her arguments. More importantly, however, there is nothing inconsistent with identifying the EID as the "unofficial" data source in a production for certain information. Indeed, data labeled as "unofficial" EID merely reflects that the EID may have been the initial source of the data. But it does not mean that CBP produced the data directly from within the EID.[1] Metzger Decl. ¶ 10. Notably, nothing in these "productions"

---

[1] While Plaintiffs have not given CBP sufficient information to identify these documents—and therefore cannot provide any information as to how the information was produced—CBP has never denied that it can obtain snapshots of certain EID data as relevant to CBP's mission.

states the information was provided *directly* from the EID, as opposed to through another application or system. But that is not what Plaintiffs request here. Plaintiffs request data directly from within the EID. CBP does not have the capability to deliver the data Plaintiffs seek from EID, as Plaintiffs requested, and it does not have the ability to query the EID directly, let alone perform the complex queries of the entirety of the EID data required to comply with Plaintiffs' request. Metzger Decl. ¶¶ 9–14.

Indeed, despite her contrary arguments here, Plaintiff Long fully understands that CBP obtains and provides EID data through CBP systems and/or applications. In prior litigation, Plaintiff Long sought "snapshots" of various EID data from CBP (and ICE). One of her declarations enclosed a document in accord with CBP's argument that it does not possess or control the EID, but rather has a limited use of EID data through other means: "Data from the EID . . . is replicated to the . . . CBP . . . Data warehouse. . . . The CBP . . . Data warehouse focuses on subject, event/incident, prosecution, and arrest data for use by CBP." Katz Reply Decl., Exh. **"C"**. The document continues, "EID Services provide read-only access to EID data in support of a number of internal ICE and external agency business processes via its four main interfaces." *Id.* Plaintiff Long acknowledges CBP does not control data within the EID, and therefore, Plaintiffs' request does not trigger CBP's FOIA obligations.

Legally, Plaintiffs take an outdated view of possession and control that is ill-suited to a request for data from a database owned and operated by one agency that is used and accessed by another agency. Plaintiffs seek to apply a rigid test equating CBP's access to data from the EID through CBP's applications, with CBP's control over the EID database and its data for FOIA purposes. Dkt. # 46-1 at 11. But the law Plaintiffs cite undermines their argument.

As discussed above, the undisputed evidence establishes CBP neither created nor obtained

the EID data that Plaintiffs request, or controls the requested data as it exists within the EID, in a manner that would allow CBP to provide the production Plaintiffs seek.

Plaintiffs discuss the four-factor test developed in the D.C. Circuit to aid in the control analysis. *See* Dkt. # 46-1 at 11. These factors need not be applied here for the reasons articulated in CBP's opening brief. Dkt. # 39-1. However, the factors—and the ultimate inquiry served by them—cut in favor of granting CBP judgment as a matter of law here. *Id.* Plaintiffs cite *Cause of Action Institute v. Office of Management and Budget*, 10 F.4th 849 (D.C. Cir. 2021). The analysis there provides a far more nuanced inquiry into the control question than Plaintiffs' argument makes room for. *Cause of Action Inst.*, 10 F.4th at 855. There, the Court started from the proposition that it refused to read the term "agency record" to "literally to encompass all documents in the possession of a FOIA-covered agency." *Id.* (citations omitted). Instead, it identified four non-exhaustive factors that help answer "the ultimate question of whether a document is an agency record . . . under a totality of the circumstances test that focuses on a variety of factors surrounding the creation, possession, control, and use of the document by an agency." *Id.* (citations omitted). More broadly, though, the Court cautioned against using factors as "an inflexible algorithm," which is exactly how Plaintiffs would have this Court apply the analysis here. *Id.* Instead, the Court counseled, "[i]n determining whether a document is an agency record in light of the totality of the circumstances, any fact related to the document's creation, use, possession, or control may be relevant." *Id.*

Regarding the first factor, Plaintiffs have offered no competent evidence establishing that "the intent of the document's creator to retain or relinquish control over the records," cuts in their favor. *Cause of Action Inst.*, 10 F.4th at 855. This factor "focuses on the agencies' policies and actions, not the subjective intent of the employees who created the document." *Id.* at 856. It also

considers "whether an agency has relinquished control to an entity external to the agency." *Id.* at 856 n. 3. It does not consider whether an agency "could have imposed stricter control" and even "authority to control . . . is not enough." *Id.* at 856. This factor instead turns on "how much control the agencies actually asserted over the documents at issue." *Id.* Here, subsequent to transmitting the data to the EID, CBP relinquishes control over the information. That CBP subsequently obtain snapshots of some EID data, as that data appears at a given time, does not alter this conclusion. And Plaintiffs have offered no evidence to the contrary.

Likewise, under the second factor, Plaintiffs offer nothing concrete to establish "the ability of the agency to use and dispose of the record as it sees fit." *Cause of Action Inst.*, 10 F.4th at 855. The Court in *Cause of Action Institute* found it persuasive that the agency had "restricted official access" to information at issue. *Id.* Here, EID is owned and operated by ICE, and CBP's access and use is likewise circumscribed. Instead, CBP uses applications which allow CBP to transmit certain information to the EID and make modifications to information within the EID, but CBP's abilities are limited to the functionality provided by the applications themselves. Metzger Decl., ¶ 7 Further, CBP does not determine when data will be deleted from the EID as ICE is responsible for the retention and preservation of EID data. Thus, CBP does not have the ability to use or dispose of the EID or its data as CBP sees fit.

The third factor, "the extent to which agency personnel have read or relied upon the document," is where Plaintiffs focus their arguments. *Cause of Action Inst.*, 10 F.4th at 855. The Court described this factor as looking to "the extent to which the agency actually used the requested document." *Id.* at 857. While the Court in *Cause of Action Institute* quoted prior case law for the proposition that "[a]ctual use is often the decisive factor when determining whether a requested document is an agency record" (*id.*), a close reading of the case and other FOIA case law, explains

why the factor mattered there, but does not matter here. In *Cause of Action Institute*, the issue was whether an agency or its employees controlled the employees' internet browsing histories. *Id.* at 853–54. The Court noted in dicta that its decision therefore differed from cases where the question of control turned on "whether an agency has relinquished control to an entity external to the agency." *Id.* at 856, n. 3. Here, by contrast, that very issue is before the Court in the context of whether CBP relinquished control over certain data after transmitting that data to an ICE-owned-and-operated database. Indeed, the D.C. Circuit has long drawn this exact distinction, explicitly finding this factor carries more weight in the agency-employee context than in the agency-or-agency control context. *Gallant v. N.L.R.B.*, 26 F.3d 168, 172 (D.C. Cir. 1994).

Plaintiffs ignore the fourth factor, "the degree to which the document was integrated into the agency's record system or files." *Cause of Action Inst.*, 10 F.4th at 855. In the context of electronic files, it is not enough for a FOIA Plaintiff to show the files at issue "resided [in] the agencies' systems." *Id.* at 858. Indeed, the Court noted, "many documents are now digitally preserved, and an agency does not necessarily 'control' every document found in its digital storage." *Id.* Analyzing this factor can be thorny in the electronic sphere because data can be dispersed and redistributed. However, this factor cuts in favor of CBP. CBP does not integrate the requested data into its own record system or files because Plaintiffs limited their request to data from within the EID. Thus, while CBP may be able to take snapshots of EID data as it appears at a given time, that data is then located in CBP's own systems for CBP's own use, and only reflects EID data at the time of the snapshot. Furthermore, Plaintiffs request involves datasets that do not currently exist in the form requested, and as such, CBP has not integrated the requested information into its systems or files. Accordingly, because Plaintiffs requested data directly from within the EID, the data is not integrated into CBP's record system or files.

Plaintiffs' argument that CBP "owns" certain fields within the EID is factually inaccurate speculation unsupported by any credible evidence. Indeed, once USBP Agents have transmitted data to the EID, CBP does not manage or control where the data ultimately resides within the over 1,000 smaller tables of data in the EID which are maintained by ICE. Metzger Decl. ¶ 11. CBP does not know how ICE utilizes particular fields within the EID, or the access ICE grants to other EID users (from other components or offices) who may subsequently update or modify that data. *Id.* CBP may transmit certain data to the EID, but CBP does not "own" the fields where that data ultimately resides within the EID. Further, while CBP may have their own reporting methodologies that utilizes data replicated from the EID, such reports are generated from CBP's own systems or data warehouses and utilize CBP's own tables or fields. *Id.* Moreover, even accepting Plaintiffs' conjecture as true (which it is not), it fails under the law. In fact, the D.C. Circuit rejected this argument over a decade ago in *Judicial Watch, Inc. v. Federal Housing Finance Agency*, 646 F.3d 924 (D.C. Cir. 2011). There, a FOIA Plaintiff argued an agency "control[led] the documents" at issue in the case when an agency "holds title to them." *Jud. Watch, Inc.*, 646 F.3d at 927. The D.C. Circuit countered, "our cases have never suggested that ownership means control." *Id.*

Plaintiffs' attempt to distinguish this matter from *Kayll v. United States Department of Homeland Security*, 2024 WL 81231 (D.D.C. Jan. 8, 2024), is ultimately unavailing. Plaintiffs are correct in stating *Kayll* did not involve the EID. However, *Kayll* provides an example of how to analyze the four factors discussed above, and it is further instructive because here, as in *Kayll*, "CBP seems to lack actual or constructive possession of the [records] at issue, [and] the case raises the question whether CBP can fairly be said to have 'withheld' a record at all," which is a threshold issue that precedes the issue of whether CBP exercises control sufficient for the requested EID data to be considered CBP agency records. *Kayll*, 2024 WL 81231, at *3. As the Court noted there,

if the agency does not possess the records, then there is no need to proceed through a control inquiry at all. *Id.* (describing control as "serving to further restrict disclosure of documents within an agency's possession rather than to expand disclosure requirements to documents outside an agency's possession."). Plaintiffs, failing to understand this is a prerequisite, did not address this in their opposition papers beyond a conclusory footnote stating it fails for the same reasons as CBP's "agency records" argument. *See* Dkt. # 46-1 at 6, n. 2.

Second, the Court in *Kayll* expressed doubt about the "creation-by-contribution" theory there, which is similarly applicable to this case. *Kayll*, 2024 WL 81231, at *4–5. In *Kayll*, CBP contributed information to an electronic system provided to CBP by another agency. *Id.* at *5. While the Court noted CBP had contributed information to an electronic form, the Court also noted, "[w]ere this decision contained in a separate document, CBP would have likely created an agency record." *Id.* at *4. However, the Court also noted, "CBP did not 'create' a record in the ordinary sense." *Id.* The Court explained, "[t]he document at issue here was initially created by the State Department," and "CBP input an explanation into that document, but it did not create any separate record of the rationale for its decision." *Id.* The Court there was "concerned that finding that CBP created the record could have wide-ranging consequences for documents produced as a result of inter-agency cooperation," but "assume[d] without deciding that CBP has created a record and proceed to the issue of control." *Id.* Here, too, CBP employees use the e3 portal to input information that becomes part of the EID. But CBP doing so does not mean that CBP creates "all datapoints" as requested by Plaintiffs. The e3 portal transmits the information to the ICE-owned-and-operated EID, which then stores the information as data.

Lastly, Plaintiffs argue CBP should produce whatever EID data is available to it. But Plaintiffs' mid-briefing re-framing of their request—shrouded in terms of reasonable

segregation—fails. "[A]n agency receiving a FOIA request is not required to divine a requester's intent." *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 499 (S.D.N.Y. 2010). Plaintiffs made a specific and technical request for data directly from within the …EID and sought "all datapoints" from the EID related to two sets of individuals. Plaintiffs cannot now change their request to encompass data that CBP may have its own applications or systems, potentially consisting of limited snapshots of EID data from a specific date and time, as opposed to data pulled directly from with the EID as originally requested by Plaintiffs. Plaintiffs specified the location from which they wanted the requested data, and an agency is "not required to search" for materials if the FOIA request did not seek those materials. *Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002); *Sheridan v. Dep't of the Navy*, 9 F. App'x 55, 58 (2d Cir. 2001) ("[D]efendants were not obliged to look beyond the four corners of the request for leads to the location of responsive documents."); *Nurse v. Sec'y of Air Force*, 231 F. Supp. 2d 323, 330 (D.D.C. 2002) ("[T]he agency is not required to exercise clairvoyant capabilities to determine the nature of the plaintiff's request.").

Moreover, Plaintiffs' attempt to reframe their request as seeking any EID data, in any form, and any location that CBP may have it, not only misunderstands how CBP applications operate with the EID, but such reframing goes well beyond the obligations FOIA imposes. "Because FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters, it is the requester's responsibility to frame requests with sufficient particularity to enable the searching agency to determine precisely what records are being requested." *Bloeser v. D.O.J.*, 811 F. Supp. 2d 316, 321 (D.D.C. 2011) (citations omitted). "And FOIA does not provide individuals with the right to demand an all-encompassing fishing expedition of files in every office within every federal law enforcement agency at taxpayer expense." *Id.* Moreover, an agency "is not required, by FOIA or by any other statute, to dig out all the information that might exist, in

whatever form or place it might be found, and to *create* a document that answers plaintiff's question." *Frank v. D.O.J.*, 941 F. Supp. 4, 5 (D.D.C. 1996); *see also id.* ("FOIA provides access to existing records but does not establish a research service.").

For these reasons, this Court should grant CBP's motion for summary judgment and, as explained below, this Court should also deny Plaintiffs' cross-motion for summary judgment and should further deny Plaintiffs' request to obtain discovery.

## II.    Plaintiffs are Not Entitled to Summary Judgment.

Even if this Court denies CBP's motion for summary judgment, it does not follow that Plaintiffs have established their right to summary judgment. A court "ruling on cross-motions for summary judgment . . . shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Shays v. F.E.C.*, 424 F. Supp. 2d 100, 109 (D.D.C. 2006). As discussed above, Plaintiffs have not rebutted CBP's factual arguments or prevailed on their legal arguments. And, for the same reasons, CBP has established Plaintiffs' FOIA request does not trigger CBP's FOIA obligations.

Moreover, even if the Court does not find in CBP's favor, courts in similar circumstances have generally ordered supplemental briefing where the initial round of summary judgment briefing leaves unanswered questions. *Long v. I.C.E.*, 464 F. Supp. 3d 409, 424, 427 (D.D.C. 2020). This procedural option preserves the presumption of good faith and aligns with the consensus of the case law that FOIA cases are usually decided on the papers and that discovery is disfavored. *Evans v. B.O.P.*, 951 F.3d 578, 584 (D.C. Cir. 2020) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."); *see also* Point III, below.

Finally, to the extent this Court affirmatively finds that CBP possess and/or controls the data that Plaintiffs request from within the EID—which is a threshold issue as to CBP's FOIA

obligations—then CBP would ask this Court to permit CBP to submit a further motion for summary judgment addressing additional potential issues, including, but not limited to, the mechanics and burden of performing a search for the requested records from within the EID (as CBP cannot query the EID directly), as well as on exemption, and reasonable segregation issues. *Jud. Watch, Inc. v. D.O.J.*, 102 F. Supp. 2d 6, 12, 12 n. 4 (D.D.C. 2000); *Reliant Energy Power Generation v. F.E.R.C.*, 520 F. Supp. 2d 194, 201–02 (D.D.C. 2007). Of particular note, CBP has flagged the issues presented in its present motion as threshold matters throughout their discussions with Plaintiffs in this case.

### III.   Plaintiffs Did Not Establish a Reason to Order Discovery Here.

Plaintiffs state Magistrate Judge Dancks authorized service of discovery demands, which Defendants have responded to as of today, but crucially Judge Dancks also noted at the same conference that Plaintiffs had not established a right to discovery. Plaintiffs failed to establish a reason to conduct discovery pursuant to Rule 56(d). While Rule 56 gives the Court discretion to order discovery, "entitlement to relief under this rule depends upon the non-movant explaining: (1) the facts which are sought in further discovery; (2) how those facts are expected to create a genuine issue of material fact; (3) what efforts the non-movant has made to obtain these facts; and (4) why these efforts were unsuccessful." *Ajluni v. F.B.I.*, 947 F. Supp. 599, 607 (N.D.N.Y. 1996) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985)).

In FOIA cases, "if the court finds that an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains, then discovery should be denied." *Jarvik v. C.I.A.*, 741 F. Supp. 2d 106, 123 (D.D.C. 2010) (citations omitted); *Carney*, 19 F.3d at 812 ("[D]iscovery . . . generally is unnecessary if the agency's submissions are adequate on their face."). "A requestor is not entitled to discovery based on its hope that it might

find additional documents or its belief that the agency is withholding information." *CareToLive*, 631 F.3d at 345. "Discovery is not warranted when it appears that discovery would only . . . afford the plaintiff an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits." *Jarvik*, 741 F. Supp. 2d at 122. Plaintiffs here are inappropriately attempting to obtain information through discovery which Plaintiffs would be unable to obtain through FOIA. *Immerso v. U.S. Dep't of Labor*, 2020 WL 8996744 (E.D.N.Y. Mar. 2, 2020), *aff'd sub nom. Immerso v. United States Dep't of Labor*, 2022 WL 17333083 (2d Cir. Nov. 30, 2022) ("This Court finds no reason to allow Plaintiff to use a motion to compel [discovery] as a tool to circumvent the purpose, scope and limitations of FOIA actions.").

Plaintiffs had an obligation "to file a proper affidavit [or declaration] in support of its motion for discovery." *CareToLive*, 631 F.3d at 344. Indeed, Plaintiffs bear a heavy burden in seeking discovery: "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations . . . or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812. To sustain this burden, Plaintiffs had to provide a "factual basis for the relief" sought. *Id.*

"Conclusory allegations that other undisclosed records must exist somewhere and that the agency is deliberately concealing records do not rise to the level of bad faith." *CareToLive*, 631 F.3d at 346. Instead, the case law required Plaintiffs to establish their claims by "tangible proof." *Carney*, 19 F.3d at 813. "[S]omething more than his bare allegations is needed." *Id.* In short, Plaintiffs must "instill[] confidence in" the Court that Plaintiffs can "make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some other evidence why summary judgment is inappropriate." *CareToLive*, 631 F.3d at 345 (citations omitted); *see also id.* at 344 ("[I]n the unique context of a dispute under the Freedom of

Information Act, [Plaintiffs bore the burden of providing] factual allegations showing the FDA's bad faith or failure to conduct a reasonable investigation.").

Plaintiffs failed to meet this heavy burden. Instead, Plaintiff Long submitted a declaration herself, which devoted just seven paragraphs over two and a half pages to explaining her position. Plaintiff Long did not provide a factual basis for her request for discovery. As explained in detail above, her declaration contained only vague statements and isolated, anecdotal evidence devoid of context. Moreover, Plaintiffs have not pierced the presumption of good faith or otherwise established that CBP has acted in bad faith. For these reasons, Plaintiff Long certainly did not provide "tangible proof" for her assertions. *Carney*, 19 F.3d at 813.

Notably, courts have generally ordered supplemental submissions to address specific issues before ordering discovery. *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011); *Jarvik*, 741 F. Supp. 2d at 123 ("Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits."); *accord Reich v. D.O.E.*, 784 F. Supp. 2d 15, 24 (D. Mass. 2011).

Moreover, despite the "well-established" rule that "discovery may be greatly restricted in FOIA cases," Plaintiffs have not proposed a limited scope of discovery here. *Heily v. Dep't of Comm.*, 69 F. App'x 171, 174 (4th Cir. 2003) (per curiam). Limiting discovery in FOIA cases serves an important goal: ensuring Plaintiffs cannot use discovery in litigation to obtain information that should be sought through either the FOIA request at issue in the case or through other FOIA requests. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) ("While ordinarily the discovery process grants each party access to evidence, in FOIA and Privacy Act cases discovery is limited because the underlying case revolves around the propriety of revealing certain documents."); *Tax Analysts v. I.R.S.*, 410 F.3d 715, 722 (D.C. Cir. 2005) ("Tax Analysts's

demand . . . would, if granted, turn FOIA on its head, awarding Appellant in discovery the very remedy for which it seeks to prevail in the suit."). Courts also guard agencies against attempts to obtain an agency's thought processes regarding exemptions. *Ajluni*, 947 F. Supp. 599, 608 (N.D.N.Y. 1996). Indeed, while Plaintiffs' discovery requests seek broad-ranging discovery, courts that have departed from the general rule of denying discovery in FOIA cases have limited the discovery to discrete factual issues. *Ruotolo v. D.O.J.*, 53 F.3d 4, 11 (2d Cir. 1995); *Pulliam v. E.P.A.*, 292 F. Supp. 3d 255, 260-61 (D.D.C. 2018).

For these reasons, this Court should deny Plaintiffs' request for discovery.

## CONCLUSION

For these reasons, United States Customs and Border Protection respectfully requests that this Court enter an Order granting United States Customs and Border Protection summary judgment, denying Plaintiffs' cross-motion for summary judgment against United States Customs and Border Protection, and, accordingly, dismissing this action as against United States Customs and Border Protection along with such further relief as this Court deems fair, just, and equitable.

Dated: December 13, 2024                    CARLA B. FREEDMAN
                                            United States Attorney


                                    By:     ___/s/David M. Katz_____
                                            David M. Katz
                                            Assistant United States Attorney
                                            Bar Roll No. 700065